

**SIGNED this 8 day of November, 2012.**

**_____
John T. Laney, III
Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.: 12-70650 JTL |
| J. FLORIBERTO GONZALEZ, | ) | |
| | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| _____ | ) | |

**Memorandum Opinion**

This matter comes before the Court on the trustee's Objection to Debtor's Claimed Exemptions. The Court heard oral arguments on the objection on September 26, 2012. At the conclusion of the hearing, the Court took the matter under advisement and allowed the parties to file letter briefs. For the reasons set forth below, the Court will sustain the trustee's objection.

**Background**

The debtor claims exemptions in the death benefit values of six life insurance policies under O.C.G.A. § 44-13-100(a)(8), which exempts "[a]ny unmatured life insurance contract owned by the debtor, other than a credit life insurance contract." These policies include a whole life insurance policy,[1] a term life insurance policy, and four burial insurance policies insuring four people. The debtor owns and is the beneficiary of the burial policies. The debtor owns the whole and term life policies, but the record is unclear on who the beneficiaries are. The trustee contends that O.C.G.A. § 44-13-100(a)(8) exempts the contracts themselves and not any rights under those contracts. The debtor argues that § 44-13-100(a)(8) is broader, exempting the rights to benefits upon maturity.

**Conclusions of Law**

The issue is how the Court should construe O.C.G.A. § 44-13-100(a)(8). The trustee argues that because the statute uses the word "contract," the statute exempts the life insurance contracts themselves and not any rights under the contracts, such as the right to benefits maturing within 180 days after the filing date. Supporting this interpretation, the trustee points to the legislative history of the federal life insurance exemption at § 522(d)(7) of the Bankruptcy Code, which is identical to the Georgia exemption. A House of Representatives report states that § 522(d)(7) "refers to the life insurance contract itself. It does not encompass any other rights under the contract, such as the right to borrow out the loan value." H.R. Rep. No. 95-595, at 361 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6317. The trustee contends that the Georgia legislature

---

[1] The debtor also claims an exemption in this policy's cash surrender value, to which the trustee does not object.

presumably knew of this history when it enacted identical language—intending the Georgia exemption to exempt identical property. The trustee also cites Waggoner v. Flatau (*In re* Waggoner), 244 B.R. 492 (Bankr. M.D. Ga. 2000) (Hershner, C.J.), which adopts this interpretation of O.C.G.A. §44-13-100(a)(8) in the context of a life insurance contract's cash surrender value.

The debtor offers no legal argument for his position. Citing no cases, the debtor asserts that it "would not make sense that the State of Georgia would encourage the protecting of the policy and having the debtor to continue paying the monthly payments only to have the trustee upon a death of the insured seize the proceeds."

Two circuit courts have addressed the breadth of § 522(d)(7), with conflicting results. In BancOhio National Bank v. Walters (*In re* Walters), 724 F.2d 1081 (4th Cir. 1984), the issue was whether § 522(d)(7) exempts proceeds of a life insurance policy paid to a debtor-beneficiary within 180 days of the petition date. Section 541(a)(5)(C) of the Bankruptcy Code states that estate property includes proceeds the debtor receives as a life insurance policy beneficiary within 180 days after filing for bankruptcy. The debtor claimed an exemption for life insurance proceeds received seven days after the debtor filed, and a creditor objected, claiming § 541(a)(5)(C) brings this money into the estate. Id. at 1082. The court held that § 522(d)(7) exempts the proceeds:

> … The proceeds derived from such policies "owned by the debtor and claimed by him as exempt … flow as an incident of ownership of the contract to the debtor rather than to the estate." *In re Walters*, 14 B.R. 92, 94, 5 C.B.C. 2d 99, 102 (Bkrtcy. S.D. W. Va. 1981). We are satisfied this result does not offend the operation of § 541(a)(5) since proceeds from like insurance policies not owned by the debtor would be included in the estate. As the bankruptcy court stated, if the debtor fulfills his contractual obligations, payment of premiums, he should not be denied the benefits of the contractual relationship. In this sense, proceeds do not represent a

windfall, as they would in the case where the debtor does not own or pay premiums on the policy.

Id. at 1083.

The Ninth Circuit came to the opposite conclusion in Woodson v. Fireman's Fund Insurance Company (*In re* Woodson), 839 F.2d 610 (9th Cir. 1988). In Woodson, the debtor-beneficiary claimed as exempt, under the California counterpart to § 522(d)(7), life insurance proceeds received three days after he filed for bankruptcy. Id. at 611-12. Relying on the Fourth Circuit's decision in Walters, the debtor argued that § 541(a)(5)(C) does not apply when the debtor is both owner and beneficiary of a life insurance policy. Woodson, 839 F.2d at 617. The Ninth Circuit disagreed: "The analysis advanced by Woodson and the Fourth Circuit overlooks the distinction between owning a policy and being its beneficiary." Id. at 618.

Citing the same legislative history quoted above, the court stated, "Section 522 only protects the debtor's ownership interest in the policy, that is, the right to maintain the policy and name a beneficiary." Id. On the other hand, § 541 "deals only with proceeds the debtor receives as a beneficiary, a status not necessarily coextensive with that of ownership and, conversely, one can be the beneficiary of a policy one does not own." Id. Noting a seeming conflict between § 541 (which makes life insurance proceeds estate property if received within 180 days of the filing date) and § 522 (which exempts unmatured life insurance policies from the estate), the court explained why the conflict is illusory:

> … But there is, in fact, no conflict between them because they deal with different points in time: Section 522 exempts the policy as of the date of filing, whereas section 541(a)(5) sweeps in proceeds acquired later.
> Moreover, the two provisions deal with assets that are quite clearly different. Section 522 exempts life insurance policies that (but for their

>loan or cash surrender value) are valuable only to the debtor. The right to maintain a policy may be a very important one, particularly if the principal's insurability has deteriorated since the policy was purchased. But this right to maintain the policy is of value to the debtor only; it is not capable of sale or transfer and is therefore of little use to the estate. Policy proceeds, on the other hand, are fully liquidated and therefore readily usable by the estate to pay creditors. It seems perfectly logical for the bankruptcy laws to protect an unmatured policy while subjecting the proceeds of a matured policy to the reach of creditors. The two assets are treated differently because they in fact *are* different.

Id. at 618-19 (citation and footnotes omitted). The court held that § 522(d)(7) does not exempt proceeds of an exempt unmatured life insurance policy that matures within 180 days after the filing date, whether or not the proceeds are from a policy the debtor owns. See id. at 617-18, 620.

The debtor in the case at bar does not claim exemptions for insurance benefits that have actually matured postpetition, as did the debtors in Walters and Woodson, nor does the debtor claim exemptions for the policies' cash surrender value, as did the debtor in Waggoner. The debtor seeks to exempt the amounts the debtor would receive upon maturity. But the analysis in those opinions applies here nonetheless. The issue in every case is the breadth of § 522(d)(7) or its state law analog.

The state law at issue here, O.C.G.A. § 44-13-100(a)(8), does not appear to have any legislative history explaining its contours. The only opinion the Court found interpreting the statute is *In re* Waggoner, where Judge Hershner noted he also found no authority interpreting or applying the statute. 244 B.R. at 493. Confronted with a dearth of authority, the Court stated that "the legislative history of the federal exemption statute and cases interpreting it may provide guidance when considering a substantially similar Georgia Code section." Id.; see also In re Oxford, 274 B.R. 887, 890 (Bankr. D. Idaho 2002) ("[E]ven though Idaho was a state which opted out of § 522(d), the Court is

justified in using judicial and other interpretation of the corollary federal exemptions, at least in the absence of any conflicting state legislative history or state decisional law."). This Court agrees that in the absence of state legislative history and state case law, legislative history for federal exemption statutes can help interpret a substantially similar O.C.G.A. section. Here, Congress clearly intended a distinction between ownership rights in an insurance contract and beneficiary rights in an insurance contract. The Georgia Assembly may or may not keep abreast of U.S.C.C.A.N., but it probably intended O.C.G.A. § 44-13-100(a)(8) to exempt the same property § 522(d) of the Bankruptcy Code does.

The Court agrees with Woodson that § 522(d)(7) exempts only the life insurance contract itself and not any beneficiary rights, and the Court agrees with Waggoner that O.C.G.A. § 44-13-100(a)(8) exempts the same. Life insurance proceeds a debtor receives within 180 days after filing bankruptcy are property of the estate. Section 44-13-100(a)(8) does not exempt these proceeds because that section does not apply to beneficiary rights. The trustee's objection to these claims of exemption is proper.

### Conclusion

The Court will sustain the trustee's objection. The Court will enter an order in accordance with this memorandum opinion.